IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| WESLEY D. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 1:04cv931-SRW |
| | ) | WO |
| JO ANNE B. BARNHART, Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OF OPINION**

Wesley D. Brown brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3)

seeking judicial review of a decision by the Commissioner of Social Security

("Commissioner") denying his application for disability insurance benefits and Supplemental

Security Income under the Social Security Act.  The parties have consented to entry of final

judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c).  Upon review of the

record and briefs submitted by the parties, the court concludes that the decision of the

Commissioner is due to be reversed.

**BACKGROUND**

On April 14, 2003, plaintiff filed an application for disability insurance benefits and

Supplemental Security Income.   On February 12, 2004, after the claim was denied at the

initial administrative levels, an ALJ conducted an administrative hearing.  The ALJ rendered

a decision on April 16, 2004.  The ALJ concluded that plaintiff suffered from severe

impairments but that plaintiff retained the residual functional capacity for the full range of

sedentary work and, applying the "grids," was not under a disability as defined in the Social Security Act at any time through the date of the hearing decision.  On August 6, 2004, the Appeals Council denied plaintiff's request for review and, accordingly, the decision of the ALJ became the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed.  The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings.  Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion."  Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court.  The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied.  Davis, 985 F.2d at 531.  If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed.  Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff's allegations.  In his application for benefits, plaintiff indicated that he became unable to work on September 1, 2002 due to Type II Diabetes Mellitus, Hepatitis C,

cirrhosis and back pain.  He stated, "I become fatigued easily and have no energy to perform any work.  My liver problems cause some pain for me.  I have occasional lower back pain. (R. 77).  At the administrative hearing, plaintiff testified that he ceased working because "I just got where I would just tire out real easy and just couldn't keep up the pace with work, having to take frequent breaks and began missing a little – well, quite a bit of work."  (R. 231).  He testified that he has abdominal pain on the right side of his abdomen, around the bottom of his rib cage, four to five times a week, including two "bad days" a week on which he experiences pain at a level of 8 on a scale of 10.  When the pain "gets bad enough" he takes Ultram, which occasionally makes him sleepy.  (R. 242-43).   He stated that his toes hurt sometimes and that his doctor said that this is probably due to his diabetes.  (R. 244). Plaintiff further testified as follows:

Q.  How long do you think you can stand without having a problem?

A.  I could stand probably 20 minutes.

Q.  And then what happens after 20 minutes?

A.  I'll start getting tired and just fatigued.

Q.  Okay.  what would you say is your biggest problem that affects your ability to do activities that's related to the illnesses you have?  What's your biggest problem?

A.  Just not – I don't have any stamina, no energy, and I just tire very – I mean very quickly.

Q.  Okay.

A.  You know, that's just my biggest thing.  I'm just tired.

Q.  Is there anything that you used to be able to do before you became ill that you no longer are able to do?

A.  Well, I used to be able to do yard work, you know, rake the yard and stuff such as that, cut grass.   I used to help my father get up firewood, and I used to play a little golf.  I wasn't very good at it but I tried, and I just don't do them things anymore.

Q.  And why don't you do those activities?

A.  Because I just don't have the energy to do – I mean I can start out all right and it ain't long, I'm just – give out.

(R. 244-45).  Plaintiff testified that he takes a nap each day, usually between 1:00 p.m. and 3:00 p.m.  (R. 243, 248-49).

The Eleventh Circuit standard for evaluating testimony of subjective symptoms.  In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).   "The standard also applies to complaints of subjective conditions other than pain." Holt, *supra*, 921 F.2d at 1223.  If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms.  Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).  After considering the testimony, the ALJ may reject the claimant's subjective complaints.

4

However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony.  Id.  The reasons articulated by the ALJ must be "explicit, adequate, and supported by substantial evidence in the record."  Preston v. Barnhart, 2006 WL 1785312, *1 (11th Cir. Jun. 29, 2006)(unpublished opinion)(citing Hale v. Bowen, 831 F.2d 1007, 1011-12 (11th Cir. 1987)).  "A claimant's subjective testimony supported by medical evidence that satisfies the pain standard is itself sufficient to support a finding of disability." Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995).[1]  "The credibility determination does not need to cite "'particular phrases or formulations'" but it cannot merely be a broad rejection which is '"not enough to enable [the court] to conclude that [the ALJ] considered [the claimant's] medical condition as a whole.""" Dyer, supra, 395 F.3d at 1210 (citations omitted).

Symptoms of liver disease.  In his decision, the ALJ found that plaintiff suffers from the impairments of diabetes mellitus, Hepatitis C and cirrhosis of the liver.  However, he

---

[1]  See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.  The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility. The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

determined that "the objectively demonstrable evidence of record fails to support that the claimant is as impaired as he has alleged." (R. 17). The court concludes that the ALJ erred in his assessment of plaintiff's allegations of fatigue.

According to the National Institutes of Health:

Many people with cirrhosis have no symptoms in the early stages of the disease. However, as scar tissue replaces healthy cells, liver function starts to fail and a person may experience the following symptoms:

- exhaustion

- fatigue

- loss of appetite

- nausea

- weakness

- weight loss

- abdominal pain

- spider-like blood vessels (spider angiomas) that develop on the skin[.]

"Cirrhosis of the Liver," NIH Publication No. 04-1134 (December 2003). Complications of cirrhosis can include edema of the legs. (Id.). Additionally,

[c]irrhosis causes resistance to insulin. This hormone, produced by the pancreas, enables blood glucose to be used as energy the cells of the body. If you have insulin resistance, your muscle, fat and liver cells do not use insulin properly. The pancreas tries to keep up with the demand for insulin by producing more. Eventually, the pancreas cannot keep up with the body's need for insulin, and type 2 diabetes develops as excess glucose builds up in the bloodstream.

(Id.).

Medical treatment records.  In October 2000, plaintiff visited his treating physician, Dr. Shaw, complaining of intermittent soreness of his right ribs for a period of three to four months.  He subsequently sought treatment several times over the next several months for abdominal pain.  (R. 184-89).  In late July 2001, plaintiff had gall bladder surgery.  However, he continued to complain of abdominal pain in visits to Dr. Shaw in August, October and November 2001.  (R. 182-84).  Dr. Shaw's treatment notes for  January 7, 2002, reflect that plaintiff "[f]eels run down, dry mouth + achy."  He also  reported frequent urination and weight loss.[2]  His blood sugar was 588, and Dr. Shaw diagnosed Type II diabetes mellitus. (R. 182).  Dr. Shaw treated plaintiff three times between January and May 2002 for his diabetes.  (R. 179-81).

In June 2002, plaintiff went to the emergency room complaining of chest pain, which turned out to be non-cardiac in origin.  Upon physical examination, the cardiologist described plaintiff as "chronically ill appearing."  (R. 126).  Plaintiff was admitted overnight and his diabetes medication was switched to include sliding scale insulin.  Plaintiff's discharge diagnoses were chest pain and uncontrolled Type II diabetes mellitus. (R. 120-21). Plaintiff was referred back to Dr. Shaw and received treatment from him on July 1 and 2.  (R. 178).

On January 10, 2003, plaintiff went to the emergency room complaining that his feet were swelling.  (R. 146).  His blood sugar was elevated.  He was treated with IV insulin,

---

[2] Dr. Shaw's office notes reflect that plaintiff weighed 138 pounds on October 25, 2000; by January 7, 2002, he weighed 120 pounds.  (R. 182, 189).  Plaintiff continued to lose weight, weighing only 113 pounds by January 2003.  (R. 176).

prescribed increased dosages of Glucotrol and Glucophage and referred to Dr. Shaw for follow-up.  (R. 143-57).  On 13 January 2003, plaintiff reported to Dr. Shaw that his feet were swelling and he was weak.  In a visit the next day, he told Dr. Shaw that he was a "proud man" and had not sought treatment since the previous summer because he had no money.  (R. 177).  Dr. Shaw treated plaintiff in his office on January 13, 14, 15 and 16 for his elevated blood sugar, and monitored plaintiff's condition by telephone on January 17, 18, 19 and 21.  (R. 174-77).

On January 22, 2003, plaintiff visited Dr. Shaw.  He complained that his feet were more swollen and sore.  Dr. Shaw noted plaintiff's enlarged abdomen. Plaintiff's weight was 131, up 18 pounds from his weight one week previously.   Dr. Shaw diagnosed liver failure and uncontrolled diabetes.  He referred plaintiff to Dr. Diavolitsis, a gastroenterologist.  (R. 173, 176).

When he was examined by Dr. Diavolitsis, plaintiff reported "chronic fatigue."  (R. 160).   Dr. Diavolitsis observed that the plaintiff "has temporal wasting and appears cachectic."[3] He further indicated  "3+ pretibial edema" and "spider angiomata" on plaintiff's skin.  He also noted that plaintiff's hepatitis C antibody was positive.  Dr. Diavolitsis stated:

> Mr. Brown has significant hepatocellular dysfunction likely due to a history of ethanol abuse and chronic hepatitis C.  The patient likely has cirrhosis.  On physical examination he probably has ascites.  He certainly has peripheral edema which is causing him some distress.

---

[3]  Cachexia is "[a] general weight loss and wasting occurring in the course of a chronic disease or emotional disturbance." *Stedman's Medical Dictionary* (26th ed.), p. 257.

(R. 161).  He prescribed a low sodium diet and two diuretics.  (Id.).  In a follow-up visit one week later, plaintiff told Dr. Diavolitsis that he was "feeling much improved. He took diuretics as prescribed on January 22, 2003 and his weight has dropped six pounds and his peripheral edema is markedly improved.  His abdominal distention is also improved."  Dr. Diavolitsis stated:

> Wesley Brown has significant hepatocellular disease, likely due to hepatitis C. At presentation last week it was consistent with ascites although the ultrasound did not show any ascites.  He certainly did have significant peripheral edema which has now resolved after treatment with diuretics.

(R. 159).  Dr. Diavolitsis continued plaintiff on a diuretic, and also prescribed Ultram, a pain medication.[4]  On March 5, 2003, plaintiff returned to Dr. Diavolitsis, reporting that he was "feeling markedly improved."  He had "some persistent abdominal discomfort but agin this is improved."  Dr. Diavolitsis stated, "Wesley Brown has significant hepatocellular disease as before.  This is related to hepatis C as well as his chronic ethanol abuse.  His ascites has now resolved. His edema is gone."  (R. 158).   Dr.  Diavolitsis suggested an EGD (esophagogastroduodenoscopy), but plaintiff indicated that "he would prefer to begin a trial of proton pump inhibitors to see if this helps his abdominal pain."  (Id.).  Dr. Shaw treated plaintiff on March 13 and April 21, 2003 for diabetes, cirrhosis and hypertension.  He prescribed Ultram on May 22, June 16, and September 16, 2003.  (R. 167-68, 203).

The ALJ's credibility determination.  The ALJ cited a number of reasons for

---

[4] Ultram is "indicated for the management of moderate to moderately severe pain in adults." *Physician's Desk Reference* (58th ed.), p. 2495.

concluding that plaintiff's testimony was not fully credible.   The ALJ notes that "all of the claimant's doctors have reported that his condition has improved with medication."  (R. 17). He cites Dr. Diavolitsis' notation on March 5, 2003 that plaintiff was "markedly improved," and plaintiff's report to Dr. Shaw on March 13, 2003 that "he was feeling <u>much</u> better." (Id.)(emphasis added by ALJ).   However, the court notes that these observations by plaintiff's physicians closely followed the episode in which plaintiff had gained 18 pounds in one week, had extremely high blood sugar, and had significant edema in his legs and distention of his abdomen, and was diagnosed with liver failure.  Plaintiff's edema was treated with diuretics, and his elevated blood sugar with insulin.  Plaintiff's report to his physicians that he was feeling much better does not indicate that he was no longer  feeling fatigue.

The ALJ further noted that "the claimant's clinical examination findings have often been found to be normal or minimally abnormal, and the objective diagnostic evidence of record has been sparse."  (R. 17).  However, Dr. Shaw diagnosed liver failure based on his clinical examination, and Dr. Diavolitsis diagnosed "significant hepatocellular disease" based on his examination and laboratory results. (R. 159-65, 173).

The ALJ further stated:

The undersigned further acknowledges that the claimant has described daily activities consisting of cleaning around the house, cooking, caring for his personal needs, shopping and driving.  He reported that he is able to load and unload groceries from the car and perform household chores.   The Administrative Law Judge did consider that the claimant reported it takes him longer to do the household chores. (Exhibit 4-E).  The undersigned concludes that the claimant's ability to engage in a wide array of activities of daily living

> is persuasive evidence that the claimant's alleged symptoms resulting from
> physical impairments are not totally disabling.

(R. 17).   The ALJ's account of Exhibit 4-E is incomplete.  In that physical activities
questionnaire, plaintiff also noted that he has to "stop frequently to rest" when completing
routine tasks, that he has to rest "qu[ite] a bit" when standing, that he cleans around the house
when he "feel[s] up to it," that he cooks meals that require little preparation time or clean up,
that he no longer does outside work because he tires quickly in the heat, and that he can
perform most activities for thirty minutes before he has to stop because of "getting very
tired."  (R. 84-89).  Plaintiff did check "no" in response to questions regarding whether his
condition limited him in driving or loading and unloading groceries (Id.)  However, he
testified at the hearing that he drives to the grocery store and drugstore and puts about ten
miles on his car per week. (R. 238).  Most of the time his mother goes with him to the
grocery store and he is able to help her unload groceries.  (R. 239).  The ALJ's summary of
the plaintiff's daily activities is technically accurate, but presents a skewed picture of
plaintiff's description of those activities.

The ALJ also relied on the lack of recent medical documentation (the last medical
record was dated almost five months before the hearing) stating that "[i]t is reasonable to
assume that if the claimant were experiencing physical difficulties to a disabling degree, he
would have presented to his physicians for ongoing treatment." (R. 17).  However, chronic
fatigue with a known cause is not the type of symptom that would necessarily cause a patient
to seek further treatment.  Additionally, plaintiff has twice indicated to his treating doctor

that he failed to obtain treatment – once for a period of several months – because of his inability to pay for the treatment.  (R. 177, 179).

The ALJ court concludes that the reasons articulated by the ALJ for discounting plaintiff's testimony are inadequate and do not reflect that he considered the plaintiff's medical condition as a whole.

Ability to perform the requirements of other work.  The ALJ found that plaintiff is unable to perform his past relevant work.  (R. 18, 20).  At Step 5, the Commissioner bears the burden of proving that plaintiff retains the residual functional capacity to perform other work existing in significant numbers in the national economy.  Humphries v. Barnhart, 2006 WL 155989, *1 (11th Cir. Jun. 8, 2006)(citing Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999)).

> The general rule is that after determining the claimant's RFC and ability or inability to return to past relevant work, the ALJ may use the grids to determine whether other jobs exist in the national economy that a claimant is able to perform.  However, "exclusive reliance on the grids is not appropriate *either* when [the] claimant is unable to perform a full range of work at a given residual functional level *or* when a claimant has non-exertional impairments that significantly limit basic work skills."
>
> Therefore, [the court] must determine whether *either* of these two conditions exists in this case.  If *either* condition exists, the ALJ was required to consult a vocational expert.

Phillips v. Barnhart, 357 F.3d 1232, 1242 (11th Cir. 2004)(citations omitted)(emphasis and alteration in original).

In order to be able to perform a full range of sedentary work, the plaintiff must be capable of working eight hours a day for five days a week, or an equivalent schedule.  See

SSR 96-8p ("Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."); see also Kelley v. Apfel, 185 F.3d 1211, 1214 (11th Cir. 1999)(setting forth Commissioner's position that "only an ability to do full-time work will permit the ALJ to render a decision of not disabled."). It is possible that plaintiff is able to work full-time. However, the evidence presently of record does not support this conclusion and, as noted above, the Commissioner bears the burden of proof. As discussed previously, the ALJ's assessment of plaintiff's subjective complaints of fatigue was flawed. Additionally, there is no medical evidence of record suggesting that plaintiff's allegations of fatigue are inconsistent with his medical diagnoses. His treating physicians have not provided an opinion regarding plaintiff's ability to work, and there was no consultative examination. The ALJ's conclusion that plaintiff is able to perform a full range of sedentary work is not supported by substantial evidence and, therefore, the ALJ's reliance on the "grids" was improper.

## CONCLUSION

For the foregoing reasons, and upon review of the record as a whole, the court concludes that the decision of the Commissioner is due to be reversed and this action remanded for further proceedings. A separate judgment will be entered.

Done, this 15th day of August, 2006.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
UNITED STATES MAGISTRATE JUDGE